YELVERTON, Judge.
This is an appeal by plaintiffs from an adverse decision in a personal injury and property damage suit resulting from a single-car accident. The trial court rendered judgment in favor of the defendants. We affirm.
After trial, but before judgment, the original plaintiff died from causes unrelated to the accident, and the appellants, his collateral heirs, were substituted in his place.
The accident happened at about 5:00 o’clock A. M. on February 12, 1971, on Louisiana Highway 44 on the outskirts of Gonzales in Ascension Parish. Richard Alexander, the original plaintiff, was driving his 1969 Buick toward Gonzales to catch his regular ride to work. It was dark and raining. His speed was about 50 m.p.h. In the vicinity of a side road that led to the Vesta Trailer Park, he lost control of his vehicle, spun around, went into the ditch on the opposite side of the road, and came to rest in the ditch facing the direction from whence he had come.
Alexander was alone in his car and there were no witnesses to the accident.
The alleged factual basis for liability was that Alexander lost control of his car because of the presence of mud on his side of the highway. This mud, it was alleged, was placed there by defendant C. M. Penn & Sons, Inc., a dirt contractor, which for about three weeks prior to the accident had been moving dump trucks in and out of the Vesta Trailer Park. Also named a defendant was United States Fidelity and Guaranty Company, the public liability insurer of C. M. Penn & Sons, Inc.
Alexander contended in his petition that it was the negligent failure of the defendant, Penn, to remove the dirt deposited by its trucks on the highway, or alternatively, to warn unsuspecting travelers of the presence of the mud that caused his accident. He alleged that Penn had performed neither of these responsibilities, and that *695 Penn and its insurer should therefore be responsible to him for his personal injuries and property damage resulting from the accident.
We are called upon on this appeal to determine whether there was manifest error in the ruling of the trial judge rejecting these contentions.
Alexander testified that he was driving along as usual to catch his ride to go to work and that he did not see anything unusual in the highway ahead of him. He did not see any mud and could not be sure what caused him to lose control, but suddenly he felt something different in the driving of the car. He applied his brakes, and the next thing he knew he was in the ditch on the opposite side of the road, turned around.
The State Police investigating officer arrived at the scene a little over an hour after the accident happened. Although his description of the accident indicated he was confused as to the direction of travel of Alexander prior to the accident (the officer did not discuss the accident with Alexander at the scene), he testified that he found no mud on the highway in the area.
Claude M. Penn, Jr., who was supervising the dirt work of his company at the Vesta Trailer Park, stated that mud frequently accumulated on the highway, but that a small Ford tractor equipped with an Olson scraper box was kept on the site for the express purpose of regularly scraping excess mud off the surface of the highway. He stated that this was done at the end of each day when work was completed and that either he or Leo Dunn, another employee, did it. Leo Dunn’s testimony was similar. While neither of these witnesses could say with certainty which of them operated the tractor and scraper on the day preceding this accident, both of them declared that they were certain that the road had been scraped.
There were two witnesses who testified on behalf of Alexander. One of them was a fellow employee, Luther Atkinson, with whom Alexander regularly rode to work and whose house was his destination on the morning of the accident. Atkinson said that after waiting for Alexander for a while he started on to work in order to catch the 6:15 ferry. He came upon the accident and stopped. Atkinson said there was mud on the highway and he ran through it.
The other witness was Joseph Brignac, whose house fronted on the side of the highway where Alexander’s car came to rest. Brignac testified that he heard the noise, went out to investigate, and was the first to arrive at the car where Alexander was sitting. The automobile did some damage to his property, tearing his mailbox down and digging holes in his yard. At the time of the accident, according to this witness, there was a slow rain. Brig-nac said there was mud on the highway, but only on one side, that being the side opposite from his house.
The record presents conflicting testimony and questions of fact only. Our duty on appellate review requires us to affirm unless the ultimate decision on the facts was manifestly erroneous. In reviewing this case, we follow this guideline as expressed in Canter v. Koehring Company, 283 So.2d 716 (La.1973):
“When there is evidence before the trier of fact which, upon its reasonable evaluation of - credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial *696 court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate function between the respective courts.”
We find no manifest error in the result reached by the trial court.
For the foregoing reasons, the judgment of the trial court is affirmed, at the cost of plaintiffs-appellants.
Affirmed.